UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATTHEW L. FESHBACH,
KATHLEEN M. FESHBACH,

    Appellants,

v.                                           Case No. 8:17-cv-02671-T-02

DEPARTMENT OF TREASURY,
INTERNAL REVENUE SERVICE,

    Appellee.
_____/

## ORDER

This matter comes to the Court on Matthew Feshbach and Kathleen Feshbach's (collectively "Appellants") appeal of a bankruptcy court's ruling that their 2001 income tax liability is not dischargeable. Dkts. 1, 24. Department of Treasury, Internal Revenue Service ("Appellee") challenges the appeal and asks the Court to affirm the bankruptcy court's judgment. Dkt. 29. In accordance with its November 8, 2018 Order, Dkt. 34, the Court **AFFIRMS** the bankruptcy court's judgment.

## BACKGROUND

Following a two-day trial, the United States Bankruptcy Court for the Middle District of Florida found that Appellants' 2001 tax liability is not dischargeable. Dkt. 1 at 89-90. In its ruling, the bankruptcy court outlined in great detail the events giving rise to this action. Dkt. 1 at 48-87.

In short, Mr. Feshbach worked as a financial manager and private investor. Dkt. 1 at 50. Thanks to an investment strategy known as "short selling against the box," Appellants were able to delay the recognition of taxable income on shares they liquidated. *Id.* at 51. By the 1990s, Appellants were able to spend $14 million on a new house near Silicon Valley. *Id.*

In 1999, Mr. Feshbach invested in a home improvement and remodeling company that shortly thereafter entered bankruptcy. *Id.* at 52. This, coupled with recent changes in tax law, triggered 1999 income taxes for Appellants in the amount of $1,950,827. *Id.* In 2001, Mr. Feshbach liquidated other securities to pay the 1999 taxes, but this again triggered income recognition. *Id.* Appellants reported $8,601,748 in taxable income in 2001, resulting in $3,247,839 in tax liability. *Id.* at 53. Appellants professed their inability to pay and proposed to Appellee a plan to settle the outstanding taxes from 1999 and 2001 for less than the full amount, otherwise known as an offer-in-compromise ("OIC"). *Id.* at 53.

What follows is a series of OICs, some of which were denied because Appellee felt they were too low and Appellants were living "way over allowable living expenses," and an interim agreement to pay $1,000 monthly. *Id*. at 54. Meanwhile, Mr. Feshbach created an investment fund company targeted at wealthy individuals. *Id.* at 55. During this time frame, Appellants had neither sold their house in Belleair, Florida, nor appreciably reduced their standard of living. *Id.* A revenue officer on the case concluded "the entire process was a delay by Mr. Feshbach." *Id.* at 56.

Appellants eventually paid off the 1999 tax debt and entered a new agreement to pay $120,000 per quarter to satisfy the 2001 tax debt. *Id.* at 57. Over ten quarters from October 2005 to January 2008, Appellants paid a total $1.2 million while reporting an income of $10,459,762 for 2005-2007. *Id.*

Following the 2008 economic downturn and a final rejected OIC, Appellants defaulted on the installment plan and Appellee began collection procedures. *Id.* at 57-58. Appellants' final payment was in May 2011, and in June of the same year they filed for Chapter 7 bankruptcy. *Id.* at 58.

All told, Appellants made $13,056,518 in the nine years prior to filing bankruptcy. *Id.* at 59. Between the first quarters of 2001 and 2010, Appellants spent more than $8.5 million on personal and household expenses and charitable contributions, including $721,809 on personal travel, $503,607 on clothing, $370,856 on groceries, $124,226 on entertainment, and more than $233,000 on a rented house in Aspen. *Id.* at 59-60.

The bankruptcy court entered its Memorandum Decision on Complaint to Determine Dischargeability of Debt for Taxes and to Set Aside Tax Liens on October 14, 2017, an amended version on October 17, and its final judgment denying discharge of the 2001 tax debt on November 1. Dkt. 1. Appellants filed a timely notice of appeal on October 30 and an amended notice on November 1. Dkt. 1 at 1-4. They argue the bankruptcy court erred in denying discharge and, in the alternative, that the court erred in finding partial discharge unavailable.

The Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a).

## STANDARD OF REVIEW

A bankruptcy court's factual findings are reviewed under a clearly erroneous standard, and "[w]hether or not a debtor willfully attempted to evade or defeat a tax is a question of fact reviewable for clear error." *In re Jacobs*, 490 F.3d 913, 921 (11th Cir. 2007).

4

To the extent the Court's analysis "involves developing auxiliary legal principles of use in other cases," the Court employs a de novo standard. *U.S. Bank Nat'l Ass'n ex rel. CW Capital Asset Mgmt. LLC v. Village at Lakeridge, LLC.*, 138 S. Ct. 960, 967 (2018).

Conclusions of law are also reviewed de novo. *Id.* (citation omitted). Whether 11 U.S.C. § 523(a)(1)(C) allows a partial discharge is an issue subject to de novo review.

## DISCUSSION

Though Chapter 7 bankruptcy generally allows for a discharge of all debts that arose prior to the filing of the petition, this policy only applies to the "honest but unfortunate debtor." *In re Mitchell*, 633 F.3d 1319, 1326-27 (11th Cir. 2011) (citations omitted); 11 U.S.C. § 727(b). To this end, 11 U.S.C. § 523 lists exceptions to discharge, including "a tax . . . with respect to which the debtor . . . willfully attempted in any manner to evade or defeat such tax." § 523(a)(1)(C).

This section requires the government to prove by a preponderance of the evidence that "the debtor engaged in (1) evasive conduct with (2) a mental state consistent with willfulness." *In re Mitchell*, 633 F.3d at 1327.

I. The bankruptcy court did not clearly err in finding that Appellants' excessive spending constituted evasive conduct.

To satisfy the conduct requirement, the government must "prove[] the debtor engaged in affirmative acts to avoid payment or collection of taxes, either through commission or culpable omission." *Id.* (citations omitted). Merely not paying taxes is insufficient. *Id.* (citation omitted). But large discretionary or non-essential expenditures are relevant where a taxpayer "knows of his or her tax liabilities, is capable of meeting them, but does not." *In re Jacobs,* 490 F.3d at 926 (citation omitted).

In finding Appellants' tax debt not dischargeable, the bankruptcy court explicitly noted it was relying on only Appellants' excessive discretionary spending in lieu of payment of taxes. Dkt. 1 at 76. Appellants argue that such spending cannot by itself satisfy the conduct element. The Court finds no support for this proposition in either the statute or caselaw.[1]

Indeed, the statute provides categorically that a tax cannot be discharged where the debtor attempted "*in any manner* to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C) (emphasis added). A plain reading of the text is unambiguous and "the modifying phrase 'in any manner' means what it says." *In re Fretz*, 244 F.3d

---

[1] Whether the applicable standard of review to make this finding is de novo or clear error does not alter the Court's analysis.

1323, 1329 (11th Cir. 2001). There is no language qualifying the sort of conduct contemplated, nor can the Court glean any congressional intent to limit the scope of applicable conduct.

Courts have ruled accordingly in the few cases where excessive spending is the only affirmative act. *See, e.g.*, *Price-Davis v. United States*, 549 B.R. 537, 544 (S.D. Fla. 2015) (debtor's excessive spending on house, private school, expensive extracurricular activities, travel, and entertainment constituted evasive conduct); *United States v. Clayton*, 468 B.R. 763, 771 (M.D.N.C. 2012); *In re Lynch*, 299 B.R. 62, 86 (Bankr. S.D.N.Y. 2003) (willful evasion where debtor "elected to spend her money elsewhere and not to satisfy her tax obligations"); *In re Angel*, No. 93-11683-BH, 1994 WL 69516, at *4 (Bankr. W.D. Okla. Feb. 24, 1994) (same). Importantly, these cases, like the instant case, are distinct from *In re Kight*, 460 B.R. 555 (Bankr. M.D. Fla. 2011) where the debtors' lifestyle and spending habits were modest, 460 B.R. at 564, and *In re Haas*, 48 F.3d 1153 (11th Cir. 1995), *abrogated by In re Griffith*, 206 F.3d 1389 (11th Cir. 2000) where the debtor prioritized other debts over his tax liability, 48 F.3d at 1156.[2] The Court

---

[2] The Court acknowledges that some bankruptcy judges have expressed reluctance to find the conduct requirement satisfied by spending habits alone. *See, e.g.*, *In re Looft*, 533 B.R. 910, 919 (Bankr. N.D. Ga. 2015) (citations omitted) (noting that excessive spending "generally" accompanies additional culpable conduct). But taking the hardline approach that Appellants propose would ignore the unique facts of a

thus holds that while nonpayment of taxes alone does not support a finding of evasive conduct, *In re Griffith*, 206 F.3d at 1394, in some cases excessive discretionary spending instead of payment can.

Additionally, the bankruptcy court did not clearly err in finding that Appellants' spending rose to such a level as to satisfy the affirmative conduct or willfulness prong of *In re Mitchell*, 633 F.3d at 1327 and *In re Fretz*, 244 F.3d at 1330. As mentioned above, the record before the court contained ample evidence that Appellants maintained a lavish lifestyle despite mounting tax debt, interest, and penalties.

The bankruptcy court was not persuaded by Appellants' contention that their opulent lifestyle—or at least the extent of it—was necessary to attract high worth investors for Mr. Feshbach's financial advisory business and thereby generate additional income to settle the debt. Dkt. 1 at 69-71. And, so long as the record supports the decision, the Court is no position to second-guess the bankruptcy court that had the benefit of trial and the ability to evaluate the testimony and credibility of witnesses.

---

given case, particularly the amount of spending and income. There is certainly a difference between the debtors in *Kight* who struggled to maintain a house and pay for their autistic son's uninsured medical expenses and Appellants who had a vacation home in Aspen. Indeed, had Appellants not spent as much as they did perhaps the bankruptcy court's finding would need to be buttressed by additional acts, but that is not the case before the Court.

Whether Appellants were able to pay off the entirety of the debt is similarly irrelevant. *See Price-Davis*, 549 B.R. at 544 ("[T]he issue is not whether she was capable of paying off *all* of her debt, but rather whether she prioritized paying at least *some* of her tax debts over non-essential expenditures.") (emphasis in original). Also not relevant is Appellee's approval of a payment plan or the partial payments Appellants made. Contrary to Appellants' unsupported contention, Appellee's approval of an interim plan pending full payment does not thereby preclude a finding that Appellants evaded taxes. *Cf. In re Jacobs*, 490 F.3d at 927 ("[P]aying some of the tax liability owed does nothing to show that a debtor's failure to make full payment was not voluntary or intentional.").

II. <u>The bankruptcy court did not clearly err in finding that Appellants acted willfully.</u>

"A debtor acts willfully when the debtor's attempt to avoid tax liability is 'done voluntarily, consciously or knowingly, and intentionally.'" *In re Mitchell*, 633 F.3d at 1327 (citations omitted). Fraudulent intent is not required; the government must merely prove the debtor acted "knowingly and deliberately." *Id.* at 1328 (citations omitted).[3]

---

[3] Appellants do not dispute that they had a duty to pay taxes and that they knew they had such a duty. *See In re Fretz*, 244 F.3d at 1330.

Courts have found that discretionary spending can evidence willful intent. *Id*. at 1329 (purchasing timeshares and stock, repaying personal loan, and donations to church relevant to mental state); *Price-Davis,* 549 B.R. at 545 ("Maintaining a lavish lifestyle while knowingly failing to pay taxes is a circumstance the court may consider in determining the requisite mental state."). The court in *Price-Davis* went on to find that "[b]y prioritizing the maintenance of her comfortable lifestyle and repeatedly failing to pay her income taxes," the debtor "knowingly and deliberately ignored her tax obligations." 549 B.R. at 545.

The bankruptcy court here looked to the same conduct as above—namely maintaining a lavish lifestyle—in finding that Appellants acted knowingly and deliberately. The Court again finds that the factual record contained more than enough evidence to support this decision.

Appellants argue that the government must show their conduct was *for the purpose of* evading the tax. Though this heightened requirement may exist in other circuits, *e.g.*, *Hawkins v. Franchise Tax Bd. of Cal.*, 769 F.3d 662, 669 (9th Cir. 2014), there is no such precedent here. Rather, the Court agrees with *Price-Davis* that discretionary spending of this magnitude is not the sort of "inadvertent mistake" the statute was designed to protect. *Price-Davis*, 549 B.R. at 545.[4]

---

[4] Drawing a line between spending for the purpose of evading taxes and spending for any other reason would inevitably obscure the factual inquiry into a debtor's mental state. Worse still, such a ruling runs

III. Section 523(a)(1)(C) does not allow for a partial discharge.

Appellants lastly argue the bankruptcy court should have found that § 523(a)(1)(C) permits partial discharge. In support, Appellants point to the statute's exception for student loans, which courts have found allows for a partial discharge.

Beginning, as the Court must, with the statutory language, § 523(a)(1)(C) precludes discharge for "an individual debtor from any debt [] for a tax . . . with respect to which the debtor . . . willfully attempted in any manner to evade or defeat such tax." § 523(a)(1)(C). As the bankruptcy court aptly observed, this section "speaks in unambiguous and absolute terms," and "cannot be read to allow individualized judicial determinations as to the amount of debt that is dischargeable." Dkt. 1 at 85. Rather, once the requirements are satisfied the Court's analysis can go no further.

Congress, moreover, chose not to use limiting phrases like "to the extent," *e.g.*, §§ 523(a)(2), 523(a)(7), or impose an additional hardship inquiry as it did for

---

the risk of encouraging spendthrift behavior in spite of—or even because of—financial obligations to creditors. As feared by the bankruptcy court, Dkt. 1 at 67, a debtor could spend with impunity before an eventual discharge.

student debt, § 523(a)(8) (precluding discharge "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents"). S*ee Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012) ("Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally.").

Though the question seems a novel one in the Eleventh Circuit, other courts have also found that partial discharge for tax evasion is not available. *In re Lynch*, 299 B.R. at 87 ("The statute gives no indication of legislative purpose or authorization to make section 523(a)(1)(C) apply to only part of a tax."); *In re Brown*, No. ADV 10-2181, 2012 WL 1970249, at *7 (Bankr. D. Utah May 31, 2012) ("[I]f § 523(a)(1)(C) applies, the entire tax debt is excepted from discharge."); *cf. In re Carlin*, 318 B.R. 556, 566 (Bankr. D. Kan. 2004) *aff'd*, 328 B.R. 221 (B.A.P. 10th Cir. 2005) (no partial discharge under subsection (B)).

Furthermore, where the demands of the statute are clear, the bankruptcy court is unable to use its powers under 11 U.S.C. § 105(a) to rule otherwise. *Law v. Siegel*, 571 U.S. 415, 421 (2014) ("[I]n exercising [its] statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions.").

The bankruptcy court did not err in finding that § 523(a)(1)(C) does not allow partial discharge.

## CONCLUSION

Based on the foregoing, the judgment of the bankruptcy court is **AFFIRMED**. The Clerk is directed to enter judgment for Appellee, to close the case, and to transmit a copy of this order to the Clerk of the United States Bankruptcy Court for the Middle District of Florida.

**DONE AND ORDERED** at Tampa, Florida, on November 14, 2018.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record